Tuklby, J.
delivered the opinion of the court.
This case involves the question of the validity of the last will and testament of John Gass, deceased, and was tried in the county of Green, upon an issue of devisavit vel non, which was found by the jury in favor of the will, and judgment rendered accordingly; to reverse which this writ of error is prosecuted. The will is attacked by the heirs of the testator, upon the ground, that at the time it purports to have been executed, he was not of a sane and disposing mind, and that, therefore, no rights áre acquired under it, but' that he died intestate, and that they are *282 entitled to bis property under the laws of descent and distribution. There is much testimony introduced upon this question on both sides, which it is unnecessary for us to examine. The question of sanity is - peculiarly a question of fact for the decision of a jury, and a party seeking to impeach the validity of a will for a supposed want of it on the part of the testator, must establish the fact of the insanity, by the clearest and most satisfactory proof. 2d Starkie Evid. 982: 1st Williams on Ex. 17. The verdict of a jury upon the question will not be set aside by a reviewing court but for great rashness on their part, or for error on the part of the inferior court in declaring the law as applicable to the case. The juiy was guilty of no rashness; the verdict is in conformity with the weight of testimony, and the only question for our consideration is, whether the law upon the various points involved in the discussion was properly expounded by the Court. Many points are debated, the most material of which we will examine.
1st. There is proof in the record tending to show that the testator held opinions somewhat peculiar in relation to futurity, to wit, that there were degrees in heaven; that whatever circle of life a man lived in on this earth, would be enjoyed by him in heaven; that his pre-eminence there depended materially upon the amount of property he acquired here, and the charitable purposes tó which he might have appropriated it. This it is contended is delusion, and the court was asked to charge, that it was evidence of insanity sufficient to avoid the will.- The court said, if a testator acts under a delusion which is the result of a disordered mind amounting to insanity, and the delusion influences the testator in the execution of his will, it will be sufficient to avoid his will; whether any particular delusion amounts to such an alienation of mind as will be esteemed insanity, is a question of fact for the jury to determine; if they believed that John Gass was under the belief that the doing some great charitable deed would advance him to a high state in heaven, and that the delusion was so absurd and visionary as to amount to insanity, and executed his will under its influence, it would be sufficient to avoid it. This charge is objected to as being vague and uncertain. It is difficult to conceive how *283 it could have been made more specific without interfering with the province of the jury, whose right it is, as we have seen, to determine the question of insanity. The judge might perhaps have attempted to define what constitutes delusion, but this is a most difficult thing to do, and is but very unsatisfactorily done even by the most acute and metaphysical minds that have investigated it; he certainly could not legally have said that the points of belief avowed by the testator were delusion, because that would have been deciding the very question for the trial of which the jury was empanneled, for delusion is insanity. Shel-ford in his treatise on the law of lunacy, says, (p. 40,) the true criterion, the true test of the absence or presence of insanity, where there is no phrenzy or raving madness seems to be the absence or presence of delusion, that delusion and insanity seem to be almost convertible terms, so that a patient under a delusion on any subject or subjects, is for that reason essentially mad or insane on such subject or subjects to the extent of the delusion. In 3d Haggard’s Rep. pages 598-9, Sir John Nichol, who is high authority, says, “that no case had ever come under his consideration, where insanity had been held to be established without any delusion ever having prevailed, nor was he able exactly to understand what is meant by a lucid interval, if it did not take place when no symptoms of delusion can be called forth at the time.” If then, delusion be insanity, to charge that the proof establishes delusion, would be to charge that the insanity is proven, the question of fact to be determined: but the court was asked to charge, that it was evidence of insanity sufficient to avoid the will'. The points of belief avowed by the testator are expressions of opinion, which opinion is either a delusion or not; if it be a delusion, it is direct insanity; if it be no delusion, there is no insanity, and of course it cannot be evidence of it. But who shall say that the opinion avowed by the testator, as to futurity, is a delusion. Delusion is defined to be, when a patient conceives something-extravagant to exist which has no existence but in his own heated imagination, and having so conceived it, is incapable of being reasoned out of the conception, (Shelford on Lunacy, 40,) as the fancying things to exist which can have no existence, *284 and áre impossible, according to the nature of things, as that trees walk, (Shelford 293,) the magnifying slight circumstances beyond all reasonable bounds, as if the parent of a child, really blameable to a certain extent in some particulars, takes occasion to fancy her a fiend, a monster, an incarnate devil, (Shelford, 41.) We can comprehend the delusion of the man who fancied he was Jesus Christ, and kindly extended his forgiveness when asked, saying, I am the Christ; also his, who imagined he correspon ded with a princess in cherry juice, and his, who dreamed dreams, and heard voices directing him to bum York Minster church. But we cannot comprehend a delusion upon a point of belief as to the nature of future rewards and punishments, and the principles of justice upon which they will be distributed. This is a subject beyond the ken of mortal man, and in one sense of the word, perhaps, every individual is laboring under a delusion who attempts to solve it. Yet there is no subject we are more disposed to theorise about, and about which there is a greater conflict of opinion. The fool hath said in his .heart there is no God; and of course no future rewards and punishments; a dreadful error, yet no one apprehends that it amounts to insanity, and that he has not a disposing mind. The Turk looks to his heaven of sensual enjoyment, the Christian to his intellectual points of faith, differing as widely as the sources of their religion. Delusion in its legal sense cannot be predicated of either, and indeed of no creed upon the subject, because there is no test by which it can be tried. The testator’s impressions are innocent and harmless at least, and for aught we can say, may be true. Charity in all its ramifications, is a theme upon which our Saviour, while on earth, dwelt again and again with marked emphasis, and enforced with the strongest promises ofrewards and punishments. Upon this point there is no error.
2d. The proof shows that the will of the testator was written by himself upon two sheets of paper which upon production appear to have been once united, but there is no proof that they were so at the time of the attestation, nor is there any direct proof that they were both present at the time the witnesses attested the will. The court charged the jury upon this point, *285 that it was necessary where a will was written on separate pieces of paper, and the last only signed by the witnesses, that they all should be produced at the time of the attestation, but that this fact might be proven by circumstances. This charge is correct; but it is said there were no circumstances from which it might be presumed. In the total absence of proof to the contrary, to hold the executors to strict proof upon this subject, might, and no doubt would, often be productive of serious consequences where wills were written'upon different sheets of paper, which after having been united become accidentally separated. The only case produced upon the subject, is from 3d Burrow, p. 1773. Testator had written his will on two sheets of paper, and’a codicil on a third, and showed the whole will and codicil to one witness; the two other witnesses never saw the first sheet, and it was not upon the table at the time of their attestation. The court held, that the jury ought to have been directed to presume that the first sheet was in the room. This is a strong case, much stronger than the present. There was then direct proof that two of the witnesses never saw the first sheet; that it was not upon the table at the time of the attestation; there is no such proof here; the whole will is in the hand writing of the testator; whenever he called upon an attesting witness he told him, ¿Ais is my will; this would not have been true if it had only been a part of it. He went to town to procure a witness; it would be a violation of all probability to suppose that he carried with him but a part of his will. The charge of the court was correct, and the circumstances justified the finding.
3d. It is contended, that the court below erred in charging the jury that the capacity to malee property and take care of it, is evidence of sanity. This is not error, it is evidence of sanity, but not conclusive.
4th. The testator devises the mass of his property, after the death or marriage of his wife, to the Gass School district, for the promotion of education. Citizens resident in the district were introduced and examined in support of the wifi. This it is objected is erroneous, because -of the interest of witnesses under the will. The point of interest has long since been narrowed down by the decisions of the courts, to a case of direct and im *286 mediate interest in the subject matter of dispute, or the case where the record of the proceedings and judgment might be subsequently used as evidence by or against the witness; neither of these is this case. The witnesses have no direct and immediate interest; if interest at all, it is collateral, depending upon the facts of their remaining in the school district, having children and choosing to send them to the school.
5th. David Gass, one of the subscribing witnesses to the codicil, is a legatee under the will; he was introduced and examined upon the trial, and proved the codicil and the sanity of the testator at the time of making it. This was objected to, but the objection was overruled by the court. In this we think there was error. David Gass was ah interested witness, and ought not to have been permitted to be examined. The court went upon the idea that the probate of the codicil and the sanity at the time of making it, did not' affect the question of sanity at the time of making the will. In this he was mistaken. A codicil will amount to a republication of the will to which it refers, whether it be annexed to the will or not, for every codicil is in construction of law part of a man’s will, and as such furnishes conclusive evidence of the testator’s considering his will as then existing. 1st Williams on Ex. 105, and the numerous authorities there referred to. The necessary consequence is, that though the testator may have been of insane mind at the time of making the will, yet if he were sane at the date of the codicil, the will is established. And yet again: when the question of insanity rests, as it does in this case, upon a general decay of body and mind, the result of old age and disease, proof of a disposing mind at the date of the codicil, would be strong corroborative proof of a disposing mind at the date of the will. David Gass was then clearly interested, and not a competent witness. But it is argued, that the statute of George the 2d, which makes void a legacy to an attesting witness of the will, is in force in this State and makes the witness competent. This statute was passed at a period of time subsequent to that at which English statutes have been held not to be in force in this country, unless in terms extended to the colonies. This statute of George 2nd, in .terms, extends only to such colonies as had *287 in force the statute of 29th, Charles the 2d, or some other statute requiring subscribing witness to wills. This was not the situation of North Carolina at the time of its passage.' The statute of frauds and peijuries, passed 29th,- Charles .2d, never was in force in North Carolina, and there was at the date of the statute of George 2d, no statute requiring subscribing witnesses to wills. It is not, therefore, in force, and does not malee the witness competent. His reception vitiates the proceedings and a new trial must be granted.
Judgment reversed and case remanded.